T.C. Memo. 2006-35

UNITED STATES TAX COURT

RON LYKINS, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6795-03.                    Filed March 2, 2006.

Ronald G. Lykins, pro se.

<u>Stephen J. Neubeck</u>, for respondent.


MEMORANDUM OPINION

HOLMES, <u>Judge</u>:  Ron Lykins, Inc., is a well-established firm
in central Ohio that for many years sold both accounting and
financial advice to its clients.  In 2000, the sole owner of the
company--Ronald Lykins--split off the financial advisory business
to a new company.  This left Lykins Inc. selling nothing but
accounting services, and the Commissioner argues that this made

it a "qualified personal services corporation."  If he is right, the Code would tax Lykins Inc. at a flat rate of 35 percent; if he isn't, its rate would be lower.

## Background

Ronald Lykins is a well-educated man, with an M.B.A. and Ph.D.; he is also a C.P.A.  He started preparing tax returns in 1969 to supplement his income, and when he opened an accounting practice it quickly came to focus on tax preparation and advice. His clients began trusting him for financial and investment advice as well, and his business steadily grew.  He incorporated it as Ron Lykins, Inc. in 1980, and Lykins Inc. has ever since filed tax returns as a Subchapter C corporation.  The financial and investment services side of the business took more and more of his time, and Lykins was advised by his lawyer that it would make sense for him to segregate the tax preparation side of the business from the investment advice side--should Lykins wish to retire, he was told, he would be able to market his businesses to a wider variety of buyers if they were separate.

In 2000, he took that advice and formed Lykins Financial Group, LLC, a limited liability company under Ohio law.  Lykins Inc. continued to offer tax services, but Lykins Financial now began offering all the financial and investment services.  Lykins himself was the sole owner of both companies.  Fully separating the companies proved difficult.  Segregating their income was

easy--in 2000, Lykins Financial's income came exclusively in the form of commissions on the sale of securities and investment advice; Lykins Inc.'s income came exclusively from fees that it charged for tax preparation and advice. But the formation of Lykins Financial had led to few physical changes. The firms shared the same office space, and had the same address, same phone number, same copying machine and fax, same employee manual, and even the same coffee machine. This all made segregating the two firms' expenses quite difficult. The firms also had no written agreement defining whose employees were whose, and while some employees worked only on financial services and investments and some worked only on tax preparation, there were also some who worked on both. Further complicating the situation, Lykins Inc. provided overhead services such as reception and payroll to Lykins Financial. It also continued to pay all the rent on the shared office space, and all the employees' wages and payroll taxes. Lykins credibly testified that he gave up on dividing expenses in a more sophisticated way, and simply allocated them between the two companies based on his own estimate of each firm's share of their combined total hours worked.

Lykins Inc. and Lykins Financial did file separate corporate tax returns. The Commissioner audited Lykins Inc., and issued it a notice of deficiency for 1999 and 2000 after concluding that the firm had become a "qualified personal services corporation"

(QPSC). The Commissioner later conceded that Lykins Inc. was not a QPSC in 1999, but stood firm in his belief that it became one in 2000. Trial was held in Ohio, where Lykins Inc. has always had its principal place of business.

## Discussion

The Code's various definitions of personal services corporations date back to a time when the top tax rate for individual income was much higher than the rate for corporations. This gave professionals an incentive to incorporate their practices to win the benefits available both to employees[1] or corporations.[2] Identifying certain personal services corporations as "qualified professional services corporations," and taxing them at a flat rate of 35 percent, see sec. 11(b)(2),[3] was Congress's way to reduce the incentive for professionals to shelter part of their income in a corporate form with a lower marginal rate. As the House Ways and Means Committee explained:

---

[1] As employees of a corporation, professionals could avail themselves of group term life insurance, medical reimbursement plans, death benefits, and a more generous retirement plan than if they remained self-employed. See Phillips, et al., "Origins of Tax Law: The History of the Personal Service Corporation", 40 Wash. & Lee L. Rev. 433, 434-435 (1983); see also Chickasaw Ambulance Serv. Inc. v. United States, 1999 WL 33656862 (N.D. Iowa).

[2] See sec. 469(a)(1)-(2), which prevent personal service corporations from deducting passive activity losses on the same terms as other corporations.

[3] Unless otherwise stated, section references are to the Internal Revenue Code and regulations as amended and in effect for 2000.

The personal service income of corporations owned by its employees is taxed to the employee-owners at the individual graduated rates as it is paid out as salary. The committee believes that it is inappropriate to allow the retained earnings to be taxed at the lower corporate graduated rates.

H. Rept. 100-391 (II), U.S.C.C.A.N. 2313-712 (1987).

Section 448(d)(2) defines QPSCs as corporations

(A) substantially all of the activities of which involve the performance of services in the fields of health, law, engineering, architecture, <u>accounting</u>, actuarial science, performing arts, or consulting, and (B) substantially all of the stock of which (by value) is held * * * by--

(i) employees performing services for such corporation * * *

(Emphasis added).

This definition sets up two tests--an ownership test and a function test. Deciding whether Lykins Inc. meets the ownership test is easy. A regulation defines "substantially all" of a corporation's stock to mean "an amount equal to or greater than 95 percent." Sec. 1.448-1T(e)(4)(i) and (ii), Temporary Income Tax Regs., 52 Fed. Reg. 22768, 22770 (June 16, 1987), Lykins is the sole shareholder of Lykins Inc., and he is an employee because he performs more than a *de minimis* amount of accounting services for the firm, sec. 1.448-1T(e)(5)(i) and (ii), Temporary Income Tax Regs., 52 Fed. Reg. 22770 (June 16, 1987), so Lykins Inc. passes.

A second regulation--the key one for this case--tells us that "substantially all" of a firm's functions are in one or

another of the professions snagged in the QPSC net:

> only if 95 percent or more of the <u>time spent by
> employees of the corporation, serving in their capacity
> as such</u>, is devoted to the performance of services in a
> qualifying field.  For purposes of determining whether
> this 95 percent test is satisfied, the performance of
> any activity incident to the actual performance of
> services in a qualifying field is considered the
> performance of services in that field.  Activities
> incident to the performance of services in a qualifying
> field include the supervision of employees engaged in
> directly providing services to clients, and the
> performance of administrative and support services
> incident to such activities. * * *

Sec. 1.448-1T(e)(4)(i), Temporary Income Tax Regs, 52 Fed. Reg.
22766 (June 16, 1987) (emphasis added).

Lykins's decision to split his business thus threatens to
ensnare him:  The Code itself lists "accounting" as one of the
qualifying fields, and the regulations carefully distinguish
investment advice sold for a fee from investment advice sold
incident to a brokerage service producing commissions.[4]  Lykins
Financial, whose income was entirely in the form of commissions
was not, under the regulation, selling services in a qualifying
field.  Lykins Inc. was.

The Commissioner argues that when Lykins Inc. hived off its
investment business from its accounting services, it necessarily
left behind only the qualifying field of accounting.  He asserts
that if employees generated commission income, they were Lykins

---

[4] Sec. 1.448-1T(3)(4)(iv)(B), <u>Examples</u> (<u>4</u>),(<u>5</u>),(<u>10</u>),
Temporary Income Tax Regs. 22767 (June 16, 1987).

Financial employees.  He backs up his argument by pointing to Lykins Inc.'s allocation of payroll costs to Lykins Financial, and Lykins Financial's reimbursement of those costs as proof that those employees who were performing investment services were employees of Lykins Financial.

An unstated assumption of the Commissioner's position is that someone is the employee only of the firm he's producing income for.  There is no caselaw interpreting the regulation's phrase "employees of the corporation, serving in their capacity as such," sec. 1.448-1T(e)(4)(i), Temporary Income Tax Regs., and the Commissioner's argument is at least plausible.  But "employer" and "employee" are legal terms with a rich history of construction in the many other places that they are found in Federal law.  The Supreme Court has, moreover, laid down as a general rule that "when Congress has used the term 'employee' without defining it, we have concluded that Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine;" see also Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 322-323 (1992).  The Commissioner has likewise adopted common law rules to distinguish employees from independent contractors.  See Rev. Rul. 87-41, 1987-1 C.B. 296; Darden, 503 U.S. at 324 (citing that revenue ruling with approval); Clackamas Gastroenterology Associates, P.C. v. Wells, 538 U.S. 440, 448 (2003)(calling the common law

element of control the "principal guidepost").

So, in the absence of a different definition in either the statute or the regulation, we think that the answer to the question "Which workers were Lykins Inc.'s employees?" should be found by applying common law principles. At common law, the key criterion is one of control--an employer is one with the right to control the manner and means by which an employee does his chores. See Rev. Rul. 87-41, 1987-1 C.B. 296. And the common law recognizes that "a person may be the servant of two masters * * * at one time as to one act, if the service to one does not involve the abandonment of the service to the other." 2 Restatement Agency 2d, sec. 226 (1958). There is even an "inference" (by which the Restatement seems to mean a rebuttable presumption) that "the actor remains in his general employment so long as, by the service rendered another, he is performing the business entrusted to him by the general employer. There is no inference that because the general employer has permitted a division of control, he has surrendered it." Id. sec. 227, comment b.

This presumption of continued employment and this recognition that in law--if not in life, see Matthew 6:24--a man can serve two masters, speak directly to this case. Lykins's testimony (which we specifically find credible on this point) and the exhibits he introduced, reinforce rather than rebut the

presumption.  They show that those who worked at Lykins Financial continued to receive paychecks drawn on Lykins Inc., continued to receive benefits provided by Lykins Inc., and continued to have their Social Security tax paid for by Lykins Inc.  They had worked at Lykins Inc. at the start of 2000, and those working on financial services during the year were told to do so by Lykins Inc.  Lykins Financial even reimbursed Lykins Inc. for their wages, taking a deduction; Lykins Inc. reported those reimbursements as income.

Simply allocating the costs of Lykins Inc. employees to Lykins Financial does not make them Lykins Financial employees. And, while the line between Lykins Inc. and Lykins Financial was clear only in its blurriness, we conclude on the peculiar facts of this case--especially the fact that before Lykins Financial was formed, all these employees were Lykins Inc. employees, and continued to have their wages, benefits, and taxes paid by Lykins Inc.--that they continued to be Lykins Inc. employees throughout the year.

This makes deciding the case easy.  Lykins Inc. and the Commissioner stipulated to a breakdown of Lykins Inc.'s employees' hours into two categories:  hours spent on accounting and consulting services, and hours spent on investment services. The exhibit shows that 80.53 percent of employee hours in 2000 were spent on accounting services, while 19.47 percent of

employee hours were spent on investment services.

Because 80.53 percent is less than 95 percent, Lykins Inc. was not a QPSC in 2000, and so not subject to tax at the QPSC rate used in the notice of deficiency.  The Commissioner's assertion of a penalty disappears with that deficiency, and so

<u>Decision will be entered</u>

<u>for petitioner</u>.