NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 4, 2010[*]
Decided November 5, 2010

**Before**

RICHARD A. POSNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 10-2318

| | |
|---|---|
| JIMMY DENTON, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Northern District of Illinois, |
| | Eastern Division. |
| *v.* | |
| | No. 05 C 1032 |
| CHICAGO TRANSIT AUTHORITY, | |
| *Defendant-Appellee.* | Charles R. Norgle, Sr., |
| | *Judge.* |

**O R D E R**

Under the Americans with Disabilities Act, job-related medical tests may be given to employees but not applicants. 42 U.S.C. § 12112(d)(2),(4)(A). Jimmy Denton, a former employee of the Chicago Transit Authority, sued the agency under the ADA for unlawfully subjecting him to a preemployment medical examination. The district court rejected his position and entered summary judgment for the CTA. We conclude the district court properly classified Denton as an employee during the period in question, and affirm the judgment.

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

Before automated fare cards, the CTA employed "collectors" to obtain fares from riders, make change, and issue transfers. The need for the position diminished in the early 1980s with the advent of electronic fare machines, and the ranks of collectors dwindled for decades until the CTA finally eliminated the position in December 2003, by which point only one collector remained on the payroll—Jimmy Denton, a 37-year veteran of the CTA. Denton received a letter notifying him that the CTA would no longer staff collectors and directing him to report for a medical examination to determine his fitness for a new position in the bus-operations unit, either as a driver or a box puller. The letter went on to note that Denton, an hourly worker, would be compensated for time spent away from work on the day of the meeting.

Denton reported to the CTA as scheduled but refused to undergo the drug-and-alcohol portion of the medical examination. He then sat down to discuss his options with a union representative and an employee-relations official. A summary of the meeting, signed by Denton, reflects that the CTA gave him a week to decide whether to undergo the examination. The CTA warned Denton that he would not be compensated for missed hours in the interim, and that failing to report back with a decision could result in disciplinary action, including discharge. According to the summary of the meeting, Denton was told that the CTA was "not directing in any way your retirement," but that he must complete a medical test before transferring to another position within the bus-operations unit. Denton never contacted the CTA with his decision, and then failed to respond to two separate letters directing him to report to the CTA's general manager. (He alleges that he never received the letters). The CTA discharged Denton in February 2004, one month after he refused the medical test.

Denton sued the CTA for violating the ADA's prohibition against preemployment medical testing. *See* 42 U.S.C. § 12112(d)(2). Alternatively, he claimed that the CTA's medical examination is unlawful because, he argues, it is neither job-related nor consistent with business necessity, as required under the ADA. *See Id*. § 12112(d)(4)(A). The district court rejected both claims and entered summary judgment for the CTA. Denton, the court explained, was still employed by the CTA during the time period in question, and thus was subject to medical testing under § 12112(d)(2). Moreover, the court ruled that a wholesale attack on the medical-examination policy lacked merit because the CTA was required by federal law to test the physical fitness of employees in the bus-operations unit.

On appeal Denton maintains that the CTA unlawfully subjected him to a preemployment medical test. He challenges the district court's finding that he was employed at the time the CTA asked him to submit to a medical examination. He insists

that his employment ended when the CTA phased out his job, and that the CTA was prohibited from conditioning future employment on his completing a medical examination.

The ADA governs when and how employers may subject individuals to medical testing. Employers covered under the ADA generally may not subject job applicants to medical examinations. 42 U.S.C. § 12112(d)(2)(A). Employers have more latitude, however, when testing employees, and may require a medical examination if the examination is "job-related" and "consistent with business necessity." *Id*. § 12112(d)(4)(A). The success of Denton's suit thus turns on how the term "employee" under the ADA has been interpreted. Because the statute does not specifically define the circumstances constituting the employer-employee relationship, courts look either to the express agreement of the parties or to common-law principles of agency. *See Clackamas Gastroenterology Assocs. v. Wells*, 538 U.S. 440, 449-450 (2003); *Lopez v. Massachusetts*, 588 F.3d 69, 83 (1st Cir. 2009); *Solon v. Kaplan*, 398 F.3d 629, 632 (7th Cir. 2005).

With these principles in mind, we agree with the district court that Denton's attempt to categorize himself as an applicant is unpersuasive. The correspondence between the CTA and Denton following the elimination of the collector position provides strong evidence that Denton was still under the control of the CTA, as required under the common law master-servant test. *See Clackamas*, 538 U.S. at 448. For instance, the letter notifying Denton of the change does not mention termination, only reassignment, and sets out conditions of continued employment. The letter *directs* Denton to report for a medical examination, and assures him that the CTA will compensate for missed work hours. Further, an employee-relations official told Denton that he was being transferred, not forced into retirement. The CTA also sent two additional letters directing Denton to report and threatening disciplinary action if he failed to do so.

Denton argues that even if he were a CTA employee when he was asked to take the examination, summary judgment was still improper because the CTA's policy of testing the fitness of bus-operation employees violates the ADA in that it is neither job-related nor consistent with business necessity. But Denton admitted at summary judgment in his statement of undisputed material facts that the CTA and its operations personnel are subject to Department of Transportation safety standards, *see* 49 C.F.R. § 391.41(b), and that the CTA's medical-examination policy tracks the DOT regulations. The Supreme Court has recognized that an employer may rely on DOT medical qualifications in defining the essential job functions of a commercial driver, *see Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 570-72 (1999), and we think it uncontroversial that the CTA serves business necessity by testing the fitness of employees in the bus-operations unit. *See Shannon v. New York City Transit Auth.*, 332 F.3d 95, 102-03 (2d Cir. 2003); *Tice v. Centre Area Transp. Auth.*, 247 F.3d 506, 517-18 (3d Cir. 2001).

AFFIRMED.