[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-14869
Non-Argument Calendar

_____

D.C. Docket No. 2:14-cv-00088-JRH-RSB

DAWN M. KICKLIGHTER,

Plaintiff-Appellant,

versus

MCINTOSH COUNTY BOARD OF
COMMISSIONERS,

Defendant,

SAUNDRA " BOOTIE" GOODRICH,
In her official capacity as Clerk of Court
for McIntosh County,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(June 9, 2017)

Before JULIE CARNES, JILL PRYOR and BLACK, Circuit Judges.

PER CURIAM:

Dawn Kicklighter appeals the district court's grant of summary judgment in favor of defendants McIntosh County Board of Commissioners (the County) and Saundra Goodrich, in her official and individual capacities as Clerk of the Superior Court of McIntosh County, Georgia. She contends that the district court erred in granting summary judgment in favor of the County on her employment-based claims on the ground that she was not an employee of the County. She also asserts the district court erred in granting summary judgment in favor of Goodrich in her official capacity because Goodrich was not entitled to Eleventh Amendment immunity and reinstatement was an available remedy. After review,[1] we affirm.

## I. DISCUSSION

*A. Claims Against the County*

Kicklighter's employment-based claims against the County fail if there was no employer-employee relationship. *See Peppers v. Cobb County, Ga.*, 835 F.3d 1289, 1295–96 (11th Cir. 2016) (noting, in the context of Title VII and the Equal Pay Act, that Congress' definition "intended to 'describe the conventional master-servant relationship as understood by common-law agency doctrine.'" (quoting

---

[1] We review a grant or denial of summary judgment *de novo*. *Young v. City of Augusta*, 59 F.3d 1160, 1170 (11th Cir. 1995). We review dismissals based upon Eleventh Amendment immunity *de novo*. *Ass'n for Disabled Ams., Inc. v. Fla. Int'l Univ.*, 405 F.3d 954, 956 (11th Cir. 2005).

*Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 444–45 (2003)); *Watson v. Drummond Co.*, 436 F.3d 1310, 1316 (11th Cir. 2006) (stating that Eleventh Circuit case law uses the same test for the Fair Labor Standards Act, the Equal Pay Act, and the Family and Medical Leave Act); *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996) ("The definition of 'employer' in the [Adults with] Disabilities Act is like the definitions in Title VII of the 1994 Civil Rights Act . . . .").

In *Peppers*, a retired criminal investigator for a county district attorney's office filed employment-based claims against the county in which he served. 835 F.3d at 1292. The district court granted summary judgment in favor of the county on the ground that it was not the plaintiff's employer. *See id.* at 1292–95. On appeal, we noted that, pursuant to the state constitution and statutes, the county "lacked the authority to supervise, hire, or fire employees of the district attorney;" rather, these functions were performed by the district attorney. *Id.* Thus, we held that the county was not the plaintiff's employer "even though it provided paymaster, administrative, and budgetary functions for the district attorney's office." *Id.* at 1301.

Goodrich, as clerk of the superior court, was a constitutionally-elected officer. *See* Ga. Const. art. IX, § 1, para. III(a). The Georgia Supreme Court has stated that employees of constitutionally-elected officers of a county are ordinarily

3

considered employees of the elected officer, not the county.  *Boswell v. Bramlett*, 549 S.E.2d 100, 102 (Ga. 2001).  In addition, Goodrich had the power to appoint Kicklighter as her deputy clerk, and the County did not have the authority to take any action affecting Goodrich's appointment or management of Kicklighter.  *See* O.C.G.A. § 15-6-59(b); *see* Ga. Const. art. IX, § 2, para. I(c)(1).  Accordingly, Kicklighter was an employee of Goodrich, not the County, and her employment-based claims against the County must fail.[2]  *See Boswell*, 549 S.E.2d at 102; *Peppers*, 835 F.3d at 1301.

In addition, because Kicklighter was not employed by the County, the County could not be held liable for Kicklighter's § 1983 claims unless she identified some policy or custom that caused her alleged injury, which she has not. *See Grech v. Clayton Cty.*, 335 F.3d 1326, 1329 (11th Cir. 2003).

*B. Claims Against Goodrich in Her Official Capacity*

The Eleventh Amendment bars federal courts from entertaining suits against a state without the state's consent.  *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003).  The Eleventh Amendment applies not only to the state, but to a defendant

---

[2] Kicklighter makes a collateral estoppel argument against the County based on abbreviated references to her state court unemployment case.  However, that unreported opinion did not decide the question of whether the County was her employer under any federal statute. Moreover, Kicklighter has not attempted to show any of the other elements of collateral estoppel exist. *See Cmty. State Bank v. Strong*, 651 F.3d 1241, 1264 (11th Cir. 2011) ("A party seeking to assert collateral estoppel under Georgia law must demonstrate that (1) an identical issue, (2) between identical parties, (3) was actually litigated and (4) necessarily decided, (5) on the merits, (6) in a final judgment, (7) by a court of competent jurisdiction.").

who acts as an "arm of the state." *Id.* The question here is whether Goodrich was acting as an arm of the state in her official capacity when she exercised her power to terminate Kicklighter.[3] *Id.* In *Manders*, we set forth the following four-factor test for determining whether an entity is an arm of the state: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Id.* at 1309. We look to state law to determine the relationship of the entity to the state and the county. *Id.*

*1. First factor:  how state law defines the entity*

The first *Manders* factor weighs in favor of immunity when the authority to engage in the function at issue is derived from the state. *Pellitteri v. Prine*, 776 F.3d 777, 780 (11th Cir. 2015). The Georgia Constitution states that superior court clerks "shall be elected by the qualified voters of their respective counties" and gives the legislature the power to set the clerks' "qualifications, powers, and duties." Ga. Const. art. IX, § 1, para. III(a). Accordingly, the legislature has enacted statutes granting various powers to and imposing duties on superior court clerks. *See* O.C.G.A. §§ 15-6-60, 15-6-61. Clerks are also granted by statute the power to appoint deputies. O.C.G.A. § 15-6-59(b). Further, the Georgia

---

[3] Kicklighter has not briefed her theory of individual liability before this Court, and thus her argument is abandoned. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("A legal claim or argument that has not been briefed on appeal is deemed abandoned and its merits will not be addressed.").

Constitution also prohibits counties from taking action that affects "any elective county office…or the personnel thereof." Ga. Const. art. IX, § 2, para. I(c)(1). As a result, the first *Manders* factor weighs in favor of finding that Goodrich was acting as an arm of the state when exercising her hiring and firing power, much like the sheriff in *Pellitteri*.

Although Kicklighter cites a Georgia Court of Appeals case that classified superior court clerks as county officers, the court based its reasoning that clerks were county officials primarily on the label that they were given. *See Tostensen v. State*, 379 S.E.2d 9, 10 (Ga. Ct. App. 1989). However, we have stated that being labeled as a "county officer" is not determinative in Eleventh Amendment immunity cases. *See Manders*, 338 F.3d at 1312. Rather, the dispositive question is the source of a defendant's authority to exercise the functions at issue. *See id.* at 1308. As discussed above, that inquiry returns a result in favor of Goodrich.

   *2. Second factor:  what degree of control the state maintains over the entity*

The second *Manders* factor asks whether Georgia law vests control of the clerk of the superior court in the state or rather with the county. In the present case, this factor also weighs in favor of immunity. Georgia law sets qualifications and training for superior court clerks, a factor we held in *Pellitteri* weighed in favor of immunity in a case in which a sheriff's deputy brought employment-related claims against the sheriff. *See* O.C.G.A. § 15-6-50; *Pellitteri*, 776 F.3d at

6

781–82 (examining state-mandated training in weighing second factor). In addition, the Governor has the authority to appoint a committee to investigate the clerk's criminal charges, alleged misconduct, or incapacity to perform the functions of the office, which can result in the superior court clerk's removal. O.C.G.A. § 15-6-82. And again, counties are barred by the Georgia Constitution from taking actions which affect the operation of the clerk's office or its personnel. *See* Ga. Const. art. IX, § 2, para. I(c)(1). Control of the clerk, then, is vested in the state, not the county. Accordingly, the second *Manders* factor weighs in favor of immunity for Goodrich.

### 3. Third factor:  where the entity derives its funds

"The third factor in the Eleventh Amendment analysis is where the entity derives its funds." *Manders*, 338 F.3d at 1323. In the present case, this factor also tilts in favor of finding that Goodrich was an arm of the state. Although the county funds the clerk's office and pays the clerks' salaries, it is required by state law to do so. *See* O.C.G.A. §§ 15-6-87, 15-6-88; *see also Pellitteri*, 776 F.3d at 782. Moreover, the county is prohibited from taking actions that affect clerks or their personnel. *See* Ga. Const. art. IX, § 1, para. I(c)(1); *see also Pellitteri*, 776 F.3d at 782.

In *Pellitteri*, we noted that a county "bear[ing] the major burden of providing funds to the sheriff's office, including the salaries of his deputies" was not

dispositive. 776 F.3d at 782. Rather, in that case the third *Manders* factor weighed in favor of immunity, because the state of Georgia required counties to set the sheriff's total budget and the county could not dictate the way the sheriff used the budget. *See id.*; *see also Ross v. Jefferson Cty. Dep't of Health*, 701 F.3d 655, 660 (11th Cir. 2012). The same reasoning applies in Goodrich's analogous situation.

### 4. Fourth factor: who is responsible for judgments against the entity

The parties concede the fourth factor weighs against immunity. However, when the fourth factor is the only one weighing against finding that the entity is an arm of the state, as here, the entity will, on balance, be entitled to Eleventh Amendment immunity. *See Pellitteri*, 776 F.3d at 783. Accordingly, Goodrich is entitled to immunity.

## C. Kicklighter's Claim for Reinstatement

Although Eleventh Amendment immunity bars claims for monetary damages against an arm of the state, it does preclude claims for prospective injunctive relief, such as reinstatement, against defendants in their official capacities. *Cross v. Ala. Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1503 (11th Cir. 1995).

Rule 25 of the Federal Rules of Civil Procedure states that "an action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending." Fed. R. Civ. P.

8

25(d).  However, we have upheld the district court's decision to deny a plaintiff the remedy of reinstatement where the defendant public official was replaced by a new official.  *See Lucas v. O'Loughlin*, 831 F.2d 232, 236 (11th Cir. 1987).  There is no dispute that Goodrich retired and a new superior court clerk had replaced her.  Kicklighter's powers and duties as deputy clerk ended when Goodrich left office.  *See* O.C.G.A. § 15-6-59(b).  And because the new clerk of the superior court could appoint her own deputies, she would not be required to accept or keep Kicklighter as a deputy.  *See id.*  Even if Kicklighter were reinstated, the new clerk "could terminate [Kicklighter] the same day on the ground that [the new clerk] preferred the person whom he [or she] had already appointed."  *Lucas*, 831 F.2d at 236.  As such, the district court did not err in determining reinstatement was no longer an available remedy.

## II. CONCLUSION

For the foregoing reasons, the judgment of the district court is

**AFFIRMED.**

9