In the

# United States Court of Appeals

## For the Seventh Circuit

No. 05-3467

CYNDEE SMITH,

*Plaintiff-Appellant,*

*v.*

CASTAWAYS FAMILY DINER and
CARROL A. GONZALEZ, doing business as
CASTAWAYS FAMILY DINER,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:04-cv-00498—**Allen Sharp**, *Judge.*

ARGUED FEBRUARY 6, 2006—DECIDED JULY 18, 2006

Before FLAUM, *Chief Judge*, and ROVNER and SYKES, *Circuit Judges.*

ROVNER, *Circuit Judge.* Plaintiff Cyndee Smith filed suit against her former employer, Castaways Family Diner ("Castaways") and its sole proprietor, Carrol A. Gonzalez, under Title VII of the Civil Rights Act of 1964, 24 U.S.C. § 2000e(5) ("Title VII" or the "Act"), complaining of discrimination on the basis of sex, race, and national origin and also retaliation. The district court entered summary judgment against Smith on her Title VII claims, concluding that Castaways and Gonzalez were not "employers" who were covered by the Act because they did not have at least

fifteen "employees" for the requisite period of time. The court excluded the two individuals who manage the restaurant from the tally, reasoning that in view of their day-to-day authority to operate the business independently on Gonzalez's behalf, they should not be counted as employees of the restaurant. *See Clackamas Gastroenterology Assocs. v. Wells*, 538 U.S. 440, 123 S. Ct. 1673 (2003). Because the district court erred in excluding these two individuals from the roster of employees on summary judgment, we reverse and remand.

## I.

Castaways is a family restaurant located in Knox, Indiana. Gonzalez, the restaurant's sole proprietor, works full-time in the health care industry. Her mother, Phyllis Foust, and her husband, Ricardo Gonzalez ("Ricardo"), manage the restaurant on a day-to-day basis. Gonzalez does not supervise their work and does not regulate the manner in which they work. She does not set their hours or require them to keep a schedule. Ricardo works full-time in the kitchen, creates the restaurant's menu, and orders the supplies. Foust runs the front of the restaurant, handles the bookkeeping together with Gonzalez, and has the authority to issue checks drawn on Castaway's bank account (although the record suggests that she rarely if ever exercises that authority[1]). Both Foust and Ricardo have the authority to establish the policies and procedures to be followed by the restaurant's employees. They also have the power to hire, discipline, and fire the restaurant's other workers without first securing Gonzalez's approval. Like the other people who work at Castaways, both Foust and Ricardo receive regular paychecks. Ricardo also shares in the profits

---

[1] Of the many photocopied checks in the record issued by Castaways in 2003, none was signed by Foust.

and losses of the restaurant, although the record tells us nothing about how, why, and to what extent he does so. Gonzalez has never considered either Foust or Ricardo to be her employee.

Smith worked part-time as a waitress at the restaurant for a period of approximately four months beginning in March 2003. According to Smith, shortly after she commenced work at Castaways, two of her co-workers—a cook and a busboy—began to sexually harass her. The alleged harassment included both lewd remarks as well as inappropriate touching and attempts to touch her. Smith perceived that there were aspects of the alleged harassment that involved race and national origin as well: the cook and busboy were of a different race and national origin than Smith, who is white. Smith represents that she went to Foust about the harassment but that Foust was unmoved. "You're easier to replace than a cook," Foust allegedly told her. "I'm not going to do a lot about this." As Smith saw it, she had no other option than to quit the diner in July 2003.

Six months after her departure, Smith filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC" or the "Commission"). As later amended, Smith's charge asserted that she had suffered harassment and discrimination on the basis of sex, race, and national origin. In addition, she contended that Castaways had retaliated against her for complaining about the harassment. The EEOC eventually closed its file on the charge without making any findings and issued Smith a notice of her right to sue.

Smith filed suit against Castaways and Gonzalez in Indiana state court. Her original complaint asserted only state-law claims of battery, negligent hiring and supervision, and infliction of emotional distress. However, upon receipt of the EEOC's notice of her right to sue, Smith amended her complaint to include Title VII claims of sex,

race, and national origin discrimination as well as re-taliation. Once the complaint was amended to include the federal claims, Castaways and Gonzalez removed the case to federal court.

Title VII only applies to businesses who employ fifteen or more employees for at least twenty weeks in a relevant calendar year, *see* 42 U.S.C. § 2000e(b), and from the get-go, the defendants asserted that Castaways did not meet that threshold. They initially raised this as a challenge to the district court's subject-matter jurisdiction, but consistent with our decision in *Komorowski v. Townline Mini-Mart & Rest.*, 162 F.3d 962, 964 (7th Cir. 1998) (per curiam), the district court held that the fifteen-employee minimum was not a jurisdictional requirement but rather an element of Smith's prima facie case of employment discrimination. R. 30, 32. (The Supreme Court's recent decision in *Arbaugh v. Y&H Corp.*, 126 S. Ct. 1235 (2006), has since made clear that the requirement is not jurisdictional.) The parties then engaged in discovery limited to the question of whether Castaways had employed at least fifteen individuals for the requisite period of twenty weeks in either 2003, when the alleged discrimination occurred, or 2002. *See* § 2000e(b) (employer must meet threshold either in "the current or preceding calendar year"); *Komorowski*, 162 F.3d at 965-66 (for purposes of § 2000e(b), "current calendar year" means the year in which the alleged discrimination occurred). Review of a defendant's payroll records is usually the starting point to determine whom the defendant employed during the relevant time period. *See Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 206-07, 117 S. Ct. 660, 663 (1997). Regrettably, multiple alleged computer failures resulted in the loss of Castaways' payroll records. Neither side was able to produce any evidence as to the number of people Castaways employed in 2002. For 2003, the parties relied on cancelled Castaways checks, their own recollec-tions, and other information to try and reconstruct an

employee roster. However, disputes emerged as to whether Ricardo and Foust should be counted as employees and as to whether certain other workers who admittedly qualified as employees were engaged for long enough periods in 2003 to put Castaways over the fifteen-employee/twenty-week minimum.[2] Ultimately, Castaways moved for summary judgment contending that the evidence was insufficient on this score.

The district court concluded that Castaways did not have fifteen or more employees for a period of twenty weeks in 2003. The pertinent analysis is set forth in the magistrate judge's report and recommendation, R. 39, which the district judge, "[w]ithout taking the trouble to write a law journal article," adopted as his own in a brief order, R. 42 at 2.

First, the court rejected Smith's assertion that Ricardo and Foust should be considered employees. Applying the multi-factor test that the Supreme Court has adopted for determining whether partners, major shareholders, directors, and the like qualify as employees, *see Clackamas Gastroenterology Assocs. v. Wells*, *supra*, 538 U.S. at 449-50, 123 S. Ct. at 1680; *Solon v. Kaplan*, 398 F.3d 629, 632-33 (7th Cir. 2005), the court found it significant that defendants "d[o] not exercise any control over [Ricardo and Foust] or their work"; rather than reporting to Gonzalez, Ricardo and Foust "'run the show.'" R. 39 at 7 (quoting Gonzalez Aff. ¶ 8). The day-to-day authority that Ricardo and Foust exercise over the diner's operation and workforce convinced the court that they have "much more influence and control over the company than a regular manager." *Id.*

---

[2] There is a high turnover among Castaways employees. Evidently it is not uncommon for individuals to work for the restaurant for a matter of weeks or even days, in some cases just long enough for them to pay their rent or buy groceries.

Gonzalez had averred in her affidavit that she did not consider either of them to be an employee (a sentiment that Foust shared in her own affidavit), so there was no evident intent that Ricardo or Foust be treated as employees. *Id.* at 8. And finally, Ricardo shared in the profits and losses of the restaurant, a fact that would distinguish him from the ordinary employee. *Id.*

Second, the court concluded that four other employees, who initially were thought to have been employees of the diner for the majority of 2003, actually were employed for time periods too short to put Castaways over the fifteen-employee/twenty-week threshold. The defendants themselves, in answer to Smith's interrogatories, at first acknowledged that these four people were in their employ throughout most of 2003. Subsequently, however, the defendants contended that their acknowledgment was based on a typographical error in the employee roster they had relied upon. On further checking, they realized that each of these employees had only worked at the diner for very brief amounts of time in 2003: two of the individuals had worked just five days that year, another had worked for approximately two weeks, and the fourth had worked for at most one or two months. The defendants submitted affidavits setting forth these belatedly-discovered facts. The court rejected Smith's contention that the tardiness of the correction left its veracity open to question. "Although it is unfortunate that Defendants did not discovery this discrepancy earlier, it does not appear that Defendants are acting in bad faith by now attempting to correct the earlier mistake. . . . Aside from questioning the timing of the correction, Plaintiff provides no evidence that demonstrates that these individuals were indeed employed longer than Defendants now claim." R. 39 at 9-10.

With Ricardo and Foust excluded altogether from the employee tally, and with the other four workers removed from the tally during the weeks they were not actually

employed at Castaways, Smith was unable to show that Castaways surmounted the fifteen-employee/twenty-week threshold. By the court's calculation, the evidence even construed favorably to Smith indicated that defendants had fifteen or more employees for only thirteen weeks in 2003. R. 39 at 10. Smith was therefore unable to establish this element of a prima facie case under Title VII, mandating summary judgment in the defendants' favor on the Title VII claims. The non-federal claims were remanded to state court. *Id.* at 11; R. 42 at 2.

## II.

In her appeal, Smith contends that the district court erred both in concluding that Foust and Ricardo were not the defendants' employees and in accepting the defendants' belated correction as to the length of time the four other employees had worked at the restaurant in 2003. Because the case was resolved on summary judgment, our review is of course de novo. *E.g.*, *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). As it turns out, our analysis begins and ends with Foust and Ricardo. The parties agree that all six of the individuals whose status is at issue in this appeal must be treated as the defendants have proposed in order to sustain the district court's judgment—that is, Ricardo and Foust must be excluded from the employee tally altogether, and the other four employees must be included only for the short periods of time indicated in the defendants' corrected tally. Thus, if we conclude that the district court erred in its treatment of any one of these individuals, then we must reverse the grant of summary judgment in the defendants' favor. For the reasons that follow, we conclude that on the record before the district court, Foust and Ricardo were erroneously excluded from the roster of Castaways employees.

As we have mentioned, Title VII applies only to an employer who "has fifteen or more employees for each

working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b). The Age Discrimination in Employment Act, 29 U.S.C. § 630(b), and the Americans with Disabilities Act, 42 U.S.C. § 12111(5), have similar thresholds. The purpose of these minimums is to facilitate the entry of small businesses into the marketplace by sparing them "from the potentially crushing expense of mastering the intricacies of the antidiscrimination laws, establishing procedures to assure compliance, and defending against suits when efforts at compliance fail." *Papa v. Katy Indus., Inc.*, 166 F.3d 937, 940 (7th Cir. 1999).

Who constitutes an "employee" for purposes of the threshold is a recurring question in employment discrimination cases. Like the other federal antidiscrimination statutes, Title VII unhelpfully defines "employee" as "an individual employed by an employer." 42 U.S.C. § 2000e(f). The Supreme Court has aptly observed that this sort of language "is completely circular and explains nothing." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323, 112 S. Ct. 1344, 1348 (1992). *Darden* dealt with who qualifies as an employee for purposes of the Employee Retirement Income Security Act ("ERISA"), a statute that defines "employee" in exactly the same way as Title VII. *See* 29 U.S.C. § 1002(6). Finding no help in that definition, the Court in *Darden* looked to the common-law definition of the master-servant relationship to determine who qualifies as an "employee." *Id.* at 323-24, 112 S. Ct. at 1348.

Following the Supreme Court's lead, the EEOC has articulated a list of sixteen factors derived from *Darden*'s common-law test to identify those individuals who qualify as "employees" for purposes of Title VII and its companion antidiscrimination statutes. EEOC Compliance Manual (CCH) ¶ 7110(A)(1), at 5716-17 (2003). *See Slingluff v. Occupational Saftey & Health Com'n*, 425 F.3d 861, 867-68 (10th Cir. 2005). These factors touch upon all aspects of the

relationship between employer and worker, but their collective focus is on "whether the employer controls the means and manner of the worker's work performance." EEOC Compliance Manual (CCH) ¶ 7110(A)(1), at 5716. In this way, the multi-factored test distinguishes an employee, whose work performance is controlled by the employer, from an independent contractor, who is engaged to perform work for the employer but has the freedom to choose the method and manner by which he completes that work. At common law, that distinction has been an important factor in determining when an employer is liable to third parties for the misdeeds of those performing work on the employer's behalf. *See* RESTATEMENT (SECOND) OF AGENCY §§ 219, 220, 250 (1957) (hereinafter, the "Restatement"). And as *Darden* illustrates, courts have come to rely on the same distinction to determine when an employer owes statutory obligations—including the duty of nondiscrimination—to persons working on its behalf.

But the *Darden*-derived test turns out not to answer the question presented by this case. Although defendants have made much of the independence with which Foust and Ricardo manage the restaurant, they rely on that autonomy not to show that Foust and Ricardo are *independent contractors* rather than employees, but rather to show that they exercise so much authority as to be *employers* rather than employees. It is on the latter distinction that the Supreme Court's decision in *Clackamas* comes into play.

In *Clackamas*, 538 U.S. 440, 123 S. Ct. 1673, the Supreme Court articulated a test for determining whether the shareholders and directors of a professional corporation should be counted as "employees" or rather as "employers." The defendant in *Clackamas* was a medical clinic that had been sued by its former bookkeeper for disability discrimination under the ADA. The question presented was whether the clinic's four physicians, who owned the shares of the professional corporation and constituted its board of

directors, qualified as "employees" for purposes of the ADA's fifteen-employee threshold. As in *Darden*, the Court looked to the common law regarding the master-servant relationship:

> At common law, the relevant factors defining the master-servant relationship focus on the master's control over the servant. The general definition of the term "servant" in the Restatement (Second) of Agency § 2(2) (1957), for example, refers to a person whose work is "controlled or is subject to the right to control by the master." *See also id.*, § 220(1) ("A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control."). In addition, the Restatement's more specific definition of the term "servant" lists factors to be considered when distinguishing between servants and independent contractors, the first of which is "the extent of control" that one may exercise over the details of the work of the other. *Id.* § 220(2)(a). We think that the common-law element of control is the principal guidepost that should be followed in this case.

538 U.S. at 448, 123 S. Ct. at 1679.

In selecting "the common-law element of control" as its polestar, the Court found itself in agreement with the EEOC, which itself had considered the circumstances under which partners, officers, members of boards of directors, and major shareholders of business organizations might constitute employees of those organizations. In the EEOC's view, the relevant inquiry was "'whether the individual acts independently and participates in managing the organization, or whether the individual is subject to the organization's control.'" *Id.* at 449, 123 S. Ct. at 1680 (quoting EEOC Compliance Manual § 605:0009 (2000)). The Commission had identified six factors to consider in answering that question:

> Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work
>
> Whether and, if so, to what extent the organization supervises the individual's work
>
> Whether the individual reports to someone higher in the organization
>
> Whether and, if so, to what extent the individual is able to influence the organization
>
> Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts
>
> Whether the individual shares in the profits, losses, and liabilities of the organization.

*Id.* at 449-50, 123 S. Ct. at 1680 (quoting EEOC Compliance Manual § 605:0009 (2000)). The Court in *Clackamas* specifically agreed that each of these six factors is relevant in assessing the status of a shareholder-director. *Id.* at 449, 123 S. Ct. at 1680. No one of these factors is dispositive, the Court emphasized. *Id.* at 451, 123 S. Ct. at 1681. Rather, a court must look to all aspects of the relationship between the shareholder-director and the organization and decide whether the shareholder-director exerts control (or has the right to exert control) over the organization and its workforce or is instead herself subject to the organization's control. *Id.* at 450-51, 123 S. Ct. at 1680-81. The former amounts to an employer, and as such must be excluded from the employee roster for purposes of the fifteen-employee minimum; only the latter constitutes an employee who may be counted toward the statutory threshold. *See id.* at 445 n.5, 450-51, 123 S. Ct. at 1677 n.5, 1680-81.

The defendants, in moving for summary judgment, and the district court, in granting summary judgment, assumed without discussion that the *Clackamas* test can always be used to determine whether a highly-placed worker like

Ricardo or Foust is an employee for Title VII purposes. Certainly our own decision in *Solon v. Kaplan*, *supra*, makes clear that the *Clackamas* test is not confined to shareholder-directors, but properly may be applied to partners, officers, members of boards of directors, and major shareholders, as the EEOC itself envisioned in framing the test that *Clackamas* adopted. 398 F.3d at 633; *see* EEOC Compliance Manual (CCH) ¶ 7110(A)(1)(d), at 5718-19. But the propriety of applying *Clackamas* even more broadly to managers, supervisors, and other highly-placed employees is open to question. As we have noted, the purpose of the *Clackamas* test is to distinguish "employers" from "employees." 538 U.S. at 445 n.5, 123 S. Ct. at 1677 n.5. "Employers" are those whose authority and interests are so aligned with the business as to render them the legal personification *of* the business, *i.e.*, principals rather than agents. *See E.E.O.C. v. Sidley Austin Brown & Wood*, 315 F.3d 696, 709-10 (7th Cir. 2002) (Easterbrook, J., concurring in the judgment). Those who own an interest in and/or hold office with the business are the individuals who may amount to "employers" in this sense, for they potentially have the right to dictate the decisions of the business and control the actions of its workers that a mere "employee" would not have. Of course, ownership or office can be nominal. Someone can be a called a "partner," for example, yet in fact lack any authority to make decisions for the firm; he might be just as much at the mercy of those who really run the firm as a clerk would be. *See Clackamas*, 538 U.S. at 446, 450-51, 123 S. Ct. at 1678, 1680-81; *Sidley Austin Brown & Wood*, 315 F.3d at 702 (majority); *id.* at 709 (concurrence). The six factors set forth in *Clackamas* thus serve to distinguish individuals whose title or ownership in the business comes without meaningful authority to run the business from those whose office or stake in the company is genuine.

Notably, however, neither Ricardo nor Foust holds the type of position that would typically bring the *Clackamas*

test into play. Unlike the physician-shareholders at issue in *Clackamas*, neither of them holds an ownership interest in Castaways by virtue of being a shareholder or equity partner, for example. As the sole proprietor of the business, Gonzalez is the only person who can be described as an owner. Moreover, neither Ricardo nor Foust occupies an office (*e.g.*, officer or member of a board of directors[3]) that might carry with it the right to vote on the decisions taken by Castaways. Legally, Gonzalez as the sole proprietor *is* Castaways; she is the individual, whether by hands-on management or delegation to others of her choosing, who decides the course of the business. *See, e.g., Pagan v. State*, 809 N.E.2d 915, 919 (Ind. Ct. App. 2004) (defining sole proprietorship as a business in which one person owns all assets, owes all liabilities, and operates the business in his own personal capacity) (citing BLACK'S LAW DICTIONARY 1398 (7th ed. 1999)); *see also Moriarty v. Svec*, 164 F.3d 323, 336 (7th Cir. 1998) (Manion, J., concurring) (noting that sole proprietorship has no legal identity apart from individual who owns it).

What power Foust and Ricardo do have is the authority delegated to them by Gonzales to run the restaurant on her behalf. Having a full-time job of her own, Gonzalez has ceded near-total if not total managerial discretion to them. Without Gonzalez's input, they hire and fire other employees, determine the schedules and rules by which those employees work, set the menu, and otherwise make the day-to-day decisions necessary to operate the restaurant. It was this managerial authority that Foust and Ricardo exercise in practice that persuaded the district court to find, pursuant to *Clackamas*, that neither one of them qualifies as an "employee" for purposes of Title VII

---

[3] As a sole proprietorship, of course, Castaways has no formal corporate structure.

but rather that both are "employers."[4] That reasoning assumes that *Clackamas* functions not only to exclude from the class of "employees" those persons whose title or ownership in the business carries with it meaningful authority to participate in the governance of the business, but also to exclude those individuals who, although they hold no office or equity within the business, have been delegated the authority to run the business on behalf of those who do. This second application of *Clackamas* would function as a liberal type of veil-piercing, treating as an "employer" rather than an "employee" any individual who exercises a sufficient degree of managerial authority, irrespective of the source of that authority. There are reasons to doubt that this application of *Clackamas* would be appropriate.

First, consistent with the common-law tradition, the cases interpreting "employee" for purposes of Title VII and other statutes concerning the rights of employees typically have not drawn a distinction between managers or supervisors and other workers. *See, e.g., Galdamez v. Potter*, 415 F.3d 1015, 1022-23 (9th Cir. 2005) (Title VII); *see also Guthart v. White*, 263 F.3d 1099, 1105 (9th Cir. 2001) (Labor Management Relations Act). The authority that a supervisor possesses to act on the employer's behalf certainly can be relevant in assessing the employer's liability to others for the supervisor's misdeeds. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 802-03, 118 S. Ct. 2275, 2290-91 (1998). But that authority does not distinguish the supervi-

---

[4] The district court did not explicitly label Foust and Ricardo as "employers," but that finding is implicit in the court's determination that their authoritative role in the business excludes them from the definition of "employee." The purpose of the *Clackamas* test, after all, is to distinguish an "employer" from an "employee." 538 U.S. at 445 n.5, 450-51, 123 S. Ct. at 1677 n.5, 1680-81; *Solon*, 398 F.3d at 632-33.

sor in *kind* from other employees. *See id.* at 800, 118 S. Ct. at 2289 ("The employer generally benefits just as obviously from the work of common employees as from the work of supervisors; they simply have different jobs to do, all aimed at the success of the enterprise."); *see also Packard Motor Car Co. v. N.R.L.B.*, 330 U.S. 485, 488, 67 S. Ct. 789, 792 (1947) ("Every employee, from the very fact of employment in the master's business, is required to act in his interest."). As the Restatement explains:

> The word "servant" does not exclusively connote a person rendering manual labor, but one who performs continuous service for another and who, as to his physical movements, is subject to the control or to the right to control of the other as to the manner of performing the service. The word indicates the closeness of the relation between the one giving and the one receiving the service rather than the nature of the service or the importance of the one giving it. Thus, ship captains and managers of great corporations are normally superior servants, differing only in the dignity and importance of their positions from those working under them. The rules for determining the liability of the employer for the conduct of both superior servants and the humblest employees are the same; the application differs with the extent and nature of their duties.

RESTATEMENT § 220(1), comment a; *see also id.* Ch. 7, tit. B, Introductory Note ("[F]ully employed but highly placed employees of a corporation . . . are not less servants because they are not controlled in their day-to-day work by other human beings. Their physical activities are controlled by their sense of obligation to devote their time and energies to the interests of the enterprise."); *id.* § 2, comment c. At a fundamental level, then, a supervisor or manager, however highly placed, is still an employee. Like any other employee, he serves the employer's interests and, like other employ-

ees, he has interests as a servant that are distinct from those of the employer.

This is a point that the Supreme Court recognized in *Packard Motor Car*. The question in that case was whether foremen on automobile production lines should be treated as "employees" with the right to organize or rather as "employers" who could not invoke the advantages of the National Labor Relations Act ("NLRA"). The Court described as "too obvious to be labored" the notion that a foreman qualified as an employee both "in the most technical sense at common law as well as in common acceptance of the term." *Id.* at 488, 67 S. Ct. at 791. The Court acknowledged that a foreman acts on his employer's behalf in a number of respects. *Id.* at 488-89, 67 S. Ct. at 791-92. (The record in *Packard Motor Car* indicated that the foremen were responsible for maintaining production output and quality as well as the promotion, demotion, and discipline of line workers. *See id.* at 487, 67 S. Ct. at 791.) But a foreman's supervisory duties, in the Court's view, did not so align his interests with those of his employer as to render the foreman himself an "employer" for purposes of the NLRA:

> Even those who act for the employer in some matters, including the service of standing between management and manual labor, still have interests of their own as employees. Though the foreman is the faithful representative of the employer in maintaining a production schedule, his interest properly may be adverse to that of the employer when it comes to fixing his own wages, hours, seniority rights or working conditions. He does not lose his right to serve himself in these respects because he serves his master in others. . . .

*Id*. at 489-90, 67 S. Ct. at 792.[5]

Second, a distinction must be drawn between the power that a supervisor or manager exercises as of right and the power that he exercises by delegation. It is not at all unusual for the owner of a business enterprise to bring someone else in to run the business on her behalf, just as Gonzalez has done. In practice, that person may be given virtually unbounded day-to-day discretion and authority in operating the business. Nonetheless, he exercises that discretion and authority at the pleasure of the business owner; he has no inherent right, as the owner does, to control the business. In that respect, his position is no different from that of any other worker: he could be over-ruled (and, depending on the terms of his employment contract, fired) just as summarily as the lowest ranked employee. By contrast, the owner of a business, even if he chooses not to exercise it, always has the right to control the direction and operation of the business. *See Schmidt v. Ottawa Med. Ctr., P.C.*, 322 F.3d 461, 466 (7th Cir. 2003) ("'Ownership involves the power of ultimate control.'") (quoting REV. UNIFORM PARTNERSHIP ACT § 202(a), cmt. (1997)); *see also* RESTATEMENT § 2(1) ("A master is a principal who employs an agent to perform service in his affairs and who controls *or has the right to control* the physical conduct of the other in the performance of the service.") (emphasis supplied). It is not happenstance, then, that the EEOC has articulated a special test for determin-

---

[5] The Court in *Packard Motor Car* ultimately sustained the National Labor Relation Board's determination that foremen qualified as "employees" with the right to organize under the NLRA. 330 U.S. at 491-93, 67 S. Ct. at 793-94. Congress subsequently amended the NLRA to expressly exclude foremen and other supervisory employees from the NLRA's definition of "employee". *See* 29 U.S.C. § 152(3). Title VII, of course, contains no such exclusion for supervisory employees.

ing when partners, corporate officers, members of boards of directors, and major shareholders qualify as employees for purposes of Title VII: those are the types of individuals who, if their status is not purely titular, have a right to participate in the governance of the business and to control the work of its employees that is not wholly dependent on the acquiescence of their superiors. *See Schmidt*, 322 F.3d at 466-67 (discussing the power that partners have to participate in governance of business). And that is precisely why the Supreme Court adopted the EEOC's test in *Clackamas*: to determine whether the physicians' status as shareholders and directors of a professional corporation gave them sufficient control over the business of the corporation as to render them "employers" rather than "employees". *See Clackamas*, 538 U.S. at 442, 123 S. Ct. at 1676 ("The question in this case is whether four physicians actively engaged in medical practice as shareholders and directors of a professional corporation should be counted as 'employees.'"); *id.* at 445 n.5, 123 S. Ct. at 1677 n.5 ("our inquiry is whether a shareholder-director is an employee or, alternatively, the kind of person that the common law would consider an employer").

Given that Ricardo and Foust have no apparent ownership interest or office in Castaways, the test that the Supreme Court and the EEOC have articulated for owners, partners, directors and the like would seem to be inapposite. Again, so far as the record reveals, any authority that Foust and Ricardo exercise they wield by delegation rather than by right. Gonzalez, as the sole proprietor of the business, enjoys the inherent power to overrule their decisions and, for that matter, send them both packing. *See Schmidt*, 322 F.3d at 466 ("The defining characteristic of the master-servant relationship is the possession in the one of the right to control the work of the other."); RESTATEMENT § 2(1). Certainly their skill and experience (and her own full-time job) might dissuade Gonzalez from taking such a step, but the point is that

she as the sole owner of the business has the prerogative to do so. The record discloses no fact suggesting that Foust and Ricardo enjoy any authority comparable to that of a partner or director—*e.g.*, the right to bring Gonzalez's business decisions to a vote, or to dissolve the business. *See Schmidt*, 322 F.3d at 466-67. Without Gonzalez's acquiescence in their decisions, their authority over the business would be no greater than that of any other employee.

One argument for applying the *Clackamas* test to a highly placed worker who holds no ownership interest or office in the enterprise might be to determine whether the named owners, directors, and officers of the business are mere marionettes whose strings are being pulled by the purported employee. It is not unheard of for businesses to be established in the name of nominal owners and directors whose purpose is to hide the identity of the real power behind the throne. This has been done to shield a business's income and assets from creditors, for example, *see*, *e.g.*, *Scott v. Comm'r of Internal Revenue*, 70 T.C. 71, 82-85 (Tax Ct. 1978), and to fraudulently secure public contracts reserved for women- and minority-owned businesses, *see*, *e.g.*, Matt O'Connor & Ray Gibson, *U.S. Alleges Huge Fraud in Chicago Minority Pacts*, CHICAGO TRIBUNE, Sept. 26, 2003, *available at* 2003 WLNR 13862720; Ray Gibson & Matt O'Connor, *Controller describes Duff firms' workings*, CHICAGO TRIBUNE, Jan. 25, 2005, *available at* 2003 WLNR 23444528.[6] In such situations, it might be appropriate to use the *Clackamas* test as a veil-piercing tool and to designate the person who truly is running the business an "employer" rather than an "employee." But no one is suggesting that Gonzalez's ownership of Castaways is a sham. By all accounts, she is the one and only owner of the business; she simply has delegated to others the authority to run it in her stead.

---

[6] Citations to "WLNR" are to the Westlaw NewsRoom database.

Our decision in *Solon*, 398 F.3d 629, illustrates the significance of having the right rather than the privilege of participating in the governance of the business. The plaintiff in *Solon* was a former law firm partner who, in relevant part, alleged that he had been removed from the partnership in violation of Title VII in retaliation for speaking out against sexual harassment allegedly taking place within the firm. Because the plaintiff had been a general partner in the firm, we sustained the district court's determination that he was not an employee who could sue for relief under Title VII. *See id.* at 631-32 (assuming, in light of parties' agreement, that Title VII protects "employees" but not "employers," and collecting cases). A total of twenty-one attorneys had worked for the firm, including general partners, special partners, and associates. The power attendant to the plaintiff's position as a general partner figured prominently in our decision that he constituted an employer under *Clackamas*:

> By 1998, Solon was one of only four general partners. The partnership agreement allowed for his involuntary termination only by a two-thirds vote of the general partners, meaning that the other three had to agree unanimously to remove him. Holding one quarter of the total voting power, Solon also exercised substantial control over how to allocate the firm's profits, and whether to require additional capital contributions, make financial commitments, amend the partnership agreement, and dissolve the firm. Because special or general partners could be added to the firm only by a unanimous vote of the existing general partners, Solon possessed a unilateral veto power over new admissions. In addition to his voting rights, Solon held an equity interest in the firm, shared in its profits, attended the partnership meetings, and had access to private financial information. Each of these benefits distinguished him from the firm's special partners and associates.

*Id.* at 633. The plaintiff had also served as the firm's managing partner for several years until just prior to his removal, and we cited the additional powers he exercised in that capacity as further support for our conclusion. *Id.* The plaintiff had argued that the powers conferred on him by the partnership agreement were illusory because, in practice, the firm routinely ignored that agreement. We found no factual support for that contention, however. *Id.* The record also failed to support the plaintiff's contention that notwithstanding his status, he had no actual authority over the firm's affairs because in practice he was supervised closely by the other partners:

> Solon had substantial control over the firm; control that he exercised in fact as managing partner, and control that he had the right to exert by virtue of the partnership agreement. Plaintiff's assertion that he consulted with his fellow partners before making major decisions may demonstrate that he was passive, but it does not show that he was powerless. Nor does his contention that he was outvoted undermine the conclusion that he was an employer.

> Plaintiff was one of four general partners who, by virtue of his voting rights, substantially controlled the direction of the firm, his employment and compensation, and the hiring, firing, and compensation of others. He played an active role in the operation of the firm as trustee of its 401(k) account, as managing partner, and informally thereafter. Under the facts of this case, he was an employer as a matter of law.

*Id.* at 634 (citation omitted).

Our opinion in *Schmidt v. Ottawa Med. Ctr.*, *supra*, 322 F.3d 461, likewise highlights the significance of an individual's right to have a say in the decisions of the business. As in *Clackamas*, the issue in *Schmidt* was whether the plaintiff, a physician and shareholder-director in the

professional corporation that operated the medical center where he worked, should be treated as an employer for purposes of the ADEA. The plaintiff sought to challenge the medical center's shareholder compensation plan pursuant to the ADEA; whether he was properly classified as an "employer" or "employee" determined whether he was entitled to bring suit. *See Sidley Austin Brown & Wood*, 315 F.3d at 698 ("the ADEA protects employees but not employers"). At the time of our decision, *Clackamas* had not yet been decided, and we acknowledged uncertainty as to what factors ought to guide our assessment of a shareholder-director's status. 322 F.3d at 463-65. What persuaded us that the plaintiff should be classified as an employer regardless of which methodology was used was the plaintiff's right, as both a shareholder and director, to participate in the governance of the corporation:

> As a shareholder, he possessed an equal vote in all matters put to shareholder vote, including the hiring of nonshareholder-physicians and shareholder compensation. Presumably as a director, he has in the past and now also enjoys a voice in all matters put before the board. Throughout his relationship with OMC and continuing to the present day, Dr. Schmidt has thus had ample opportunity to share in the management and control of OMC.

> And the mere fact that lately his preferences on shareholder-compensation proposals have not secured the majority opinion of his fellow shareholders does not alter the fact that with each vote he has exercised this right to control. Even though Dr. Schmidt rejected the current plan because he would be adversely affected by its passage, he nevertheless had the opportunity to participate in revising and voting on it. . . .

*Id.* at 467.

In short, *Solon* and *Schmidt* confirm that the source of an individual's authority has an important bearing on whether he is appropriately classified as an employer or employee. In both cases, the plaintiff occupied a position (partner or shareholder/director) which by right gave him a vote in the affairs of the organization. That right did not necessarily enable the plaintiff to impose his own will on the organization: in *Solon*, the plaintiff had been removed from the partnership, and in *Schmidt*, an unfavorable compensation plan had been adopted over the plaintiff's objection. But in each case the plaintiff's status entitled him to a say in the fundamental decisions of the business that other workers (*e.g.*, associates, special partners, and non-shareholders) did not enjoy.

There is no evidence in this record suggesting that either Foust or Ricardo possesses a comparable status with Castaways. If there were, then it would be appropriate to apply *Clackamas*. But in the absence of evidence that an individual occupies a position in the enterprise that may give him or her the *right* to exercise control over the enterprise and its workers, the *Clackamas* test strikes us as inapposite. This is not to say that supervisors, managers, and other highly placed employees like Foust and Ricardo do not exercise substantial authority in practice, but rather that they do so subject to the delegation and acquiescence of owners, directors, and the like who have a right rather than a privilege to control the business. *Clackamas*, we believe, is aimed at identifying the latter category of individuals.

All this may simply be another way of saying that the *Clackamas* test, even if it properly can be applied to an individual who, like Foust and Ricardo, occupies no position within an enterprise akin to partner, shareholder, or director that might confer on him the right to exert control over the enterprise, was misapplied here. Determining whether an individual controls or has the right to control an

enterprise, and thus constitutes an employer, must take into account not only the authority that person wields within the enterprise but also the source of that authority. Specifically, a court must consider whether the individual exercises the authority by right, or whether he exercises it by delegation at the pleasure of others who ultimately do possess the right to control the enterprise. *Compare* RE-STATEMENT § 2(1) ("A master is a principal who employs an agent to perform service in his affairs and who controls *or has the right to control* the physical conduct of the other in the performance of the service.") (emphasis supplied); *with id.* § 2(2) ("A servant is an agent employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled *or is subject to the right to control* by the master.") (emphasis supplied); *see also Clackamas*, 538 U.S. at 448, 123 S. Ct. at 1679.

This consideration is absent from the district court's analysis. The court instead looked at the day-to-day authority over the restaurant that Foust and Ricardo exercise, without asking whether they exercise that power by right, as a partner of Gonzalez's might, or rather at her delegation and discretion. Similarly, the court found it significant that Gonzalez does not supervise their work and that they do not report to her, overlooking the point that as the sole owner of the business, she of course has the right to exercise such oversight. So far as the record reveals, Foust and Ricardo's ability to run the business is dependent upon Gonzalez's willingness to acquiesce to their actions. They have no status comparable to hers as an owner that would convey an independent right to participate in decisions affecting the business. Gonzalez has chosen to be a hands-off owner, but consider what could happen if she changed her mind. As the owner of Castaways, it would be her prerogative to direct and supervise the work of Foust and Ricardo, to assume responsibility for hiring, firing, and discipline of employees, to establish rules for Foust, Ricardo, and the

rest of the staff to follow, and for that matter to fire Foust and Ricardo. For their part, Foust and Ricardo would have no right, as a fellow owner, partner, or director might have, to overrule or at least vote upon Gonzalez's decisions. In that respect, they are as subject to control by Gonzalez as any other employee of the restaurant. *See* RESTATE-MENT § 2(2). And to that extent, their interests are not congruent with, and are potentially adverse to, Gonzalez's interests as the business owner. *See Packard Motor Car Co.*, 330 U.S. at 489-90, 67 S. Ct. at 792.

We are, of course, aware that neither *Clackamas* nor the EEOC test that it adopted mentions the source of the individual's authority as a relevant consideration. It is hinted at in at least one of the test's six factors: the first question posed is "[w]hether the organization *can* hire or fire the individual or set the rules and regulations of the individual's work," 538 U.S. at 449, 123 S. Ct. 1680 (emphasis ours), a phrasing that suggests a court should consider whether an individual is subject to being overruled or discharged, even if in practice he appears to enjoy substantial autonomy. *See* RESTATEMENT § 2(2). More to the point, the significance of the source of an individual's authority is implicit in the framing of the test as one for partners, major shareholders, directors, and the like. For as we have discussed, those are the types of individuals whose status within an enterprise potentially gives them authority that is not dependent on the acquiescence of others. *Clackamas* itself speaks not only of the control that an employer exercises but his *right* to exert such control. *Id.* at 448, 123 S. Ct. at 1679 (quoting RESTATEMENT § 2(1)). Referencing the right to control implicitly acknowledges that employer may choose not to exert it, as by delegation. *See* RESTATE-MENT § 220(1) comment d ("In some types of cases which involve persons customarily considered as servants, there may . . . be an understanding that the employer shall not exercise control.").

The district court noted one fact as to Ricardo—that he shared in the profits and losses of Castaways with Gonzalez—that is consistent with his being an employer. Generally speaking, sharing in the profits, losses, and liabilities of an enterprise is an indicum of ownership, and an owner can qualify as an employer. *See Clackamas*, 538 U.S. at 450, 123 S. Ct. at 1680. Of course, the fact that Castaways is a sole proprietorship is inconsistent with the notion that the business might have any owner other than Gonzalez. But putting aside that conundrum, what matters for our purposes is the lack of elaboration in the record as to how and why Ricardo shares in the profits and losses of the business. We don't know, for example, whether he does so simply by virtue of his marital relationship with Gonzalez or whether he has some type of agreement with her that gives him a cognizable stake in the business. Without more information, the mere fact that he "shares" in the profits and losses of the business tells us very little about whether his status is closer to that of an employer than an employee, particularly in view of the additional fact that Ricardo and Foust otherwise receive regular paychecks just like other employees of the restaurant. In theory, further evidence as to Ricardo's sharing in the profits and losses of the business might reveal that he has something like an ownership interest in the business, and such an interest might lend additional weight to the notion that he is an employer rather than an employee. But on this record, the evidence is insufficient to support the finding that he is the former rather than the latter.

We add that Ricardo's status as Gonzalez's spouse, and Foust's status as her mother, does not support the finding that they are employers. Their relationships with Gonzalez certainly may explain why Gonzalez has delegated to them the authority to run the restaurant on her behalf. But their ties to Gonzalez do not give them any more of a right to control the business than any other manager

Gonzalez might have hired; their authority is entirely dependent on her acquiescence. Again, one need only consider what might happen if they became estranged from Gonzalez: she would have every right as the owner to give them the boot, and they would have no authority, as a partner, director, or major shareholder might, to resist that decision.

We conclude our analysis with a few words about the interplay between our holding and the underlying purposes of Title VII. *See Sidley Austin Brown & Wood*, 315 F.3d at 702 (majority) ("[s]tatutory purpose is relevant" in considering whether partners of large law firm should be treated as employees or employers). As a statute aimed at preventing and remediating invidious discrimination in the workplace, Title VII (like its companion antidiscrimination statutes) should be liberally construed. *E.g.*, *Komorowski v. Townline Mini-Mart & Rest.*, *supra*, 162 F.3d at 965; *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 888-89 (7th Cir. 1996). Characterizing someone as an employer rather than an employee directly affects the reach of Title VII in two different ways. First, categorizing an individual as an "employer" may well preclude that individual from filing suit under Title VII, as it is thought that only an "employee" is entitled to invoke the protections of the statute. *See Solon*, 398 F.3d at 631-32 (assuming without deciding that Title VII does not protect those individuals who constitute "employers"); *Sidley Austin Brown & Wood*, 315 F.3d at 698 (ADEA). Second, as this case demonstrates, treating an individual as an employer excludes him or her from the workers who will be counted towards the fifteen-employee threshold, and consequently may altogether remove a firm from the coverage of Title VII. In our view, both ramifications serve to demonstrate why it is inappropriate to focus on the authority and independence that an individual exerts within an enterprise while being blind to whether that authority and independence is exercised by right or by delegation.

Without some status as an owner, partner, director or the like that grants a worker the right to vote and participate in the management of the enterprise, that worker's influence ultimately is dependent on those who do have such a right. And because the worker is at their mercy, she is just as vulnerable as any other employee to employment decisions that may be discriminatory. Like any other employee, then, she ought to be able to invoke the protections of Title VII. *Cf. Sidley Austin Brown & Wood*, 315 F.3d at 702 (majority) ("it can be argued that partners should be classified as employers rather than employees for purposes of the age discrimination law because partnership law gives them effective remedies against oppression by their fellow partners . . .").

Similarly, an individual who is given managerial or supervisory authority but has no right comparable to that of a partner, owner, or director to govern the business has interests that are distinct from those who do enjoy that right and are congruent with the interests of lower-ranking employees. *See Packard Motor Car Co.*, 330 U.S. at 489-90, 67 S. Ct. at 792. As we have observed, highly placed employees who have no inherent right to participate in the governance of the business are as subject to the control of the business principals as any other employee. Their decisions might be overruled, their pay might be docked, their hours might be altered, their positions might be eliminated. *Ibid.* In the fundamental sense that they lack the right to control the enterprise, they are like other employees and should be counted as such in determining whether the business meets the fifteen-employee minimum. A small business owner like Gonzalez has the option of running the business herself, without the need for persons like Foust or Ricardo to act in her stead. In that way, she might keep the number of employees below Title VII's threshold. If instead, she chooses to engage another person to run the business on a day-to-day basis for her, without

giving him a stake in the business that lets him share the power to control it, then she is taking on an additional employee that may put her workforce over the statutory threshold, just as if she had taken on an additional cook, server, cashier, or busboy.

We noted at the outset of our analysis that if the district court erred in excluding from the employee tally any one of the individuals whose status was disputed, then the error would require the reversal of the summary judgment entered in the defendants' favor. For the reasons we have articulated, the undisputed facts do not support the district court's finding that Foust and Ricardo are employers rather than employees. The court therefore erred in granting summary judgment on this basis. We need not and do not reach the other employees whose status is disputed.

## III.

The district court erred in determining on summary judgment that Phyllis Foust and Ricardo Gonzalez constitute employers rather than employees. As the inclusion of one or both of these two individuals suffices to put Castaways over Title VII's fifteen-employee threshold, the entry of summary judgment in favor of defendants Castaways and Carrol Gonzalez was in error. We REVERSE the entry of summary judgment in defendants' favor and REMAND for further proceedings consistent with this opinion.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*