PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3148
_____

ROBERT A. MARIOTTI, SR.,
                              Appellant

v.

MARIOTTI BUILDING PRODUCTS, INC.
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
District Court  No. 3-11-cv-00737
District Judge: The Honorable A. Richard Caputo

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 18, 2013

Before: SMITH, GREENAWAY, JR., and VAN
ANTWERPEN,
*Circuit Judges*

(Filed: April 29, 2013)


1

Clifford B. Cohn
Suite 925
620 Chestnut Street
Public Ledger Building
Philadelphia, PA  19106

Jeffrey J. Malak
Chariton, Schwager & Malak
138 South Main Street
P.O. Box 910
Wilkes-Barre, PA  18703

Thomas H. Roberts
Thomas H. Roberts & Associates
105 South First Street
Richmond, VA  23219
        *Counsel for Appellant*

Daniel T. Brier
Donna A. Walsh
Myers, Brier & Kelly
425 Spruce Street
Suite 200
Scranton,  PA  18503
        *Counsel for Appellee*

_____

OPINION

_____

SMITH, *Circuit Judge.*

2

In *Clackamas Gastroenterology Associates, P.C. v. Wells*, 538 U.S. 440 (2003), the Supreme Court set out a test for determining whether a shareholder-director of a professional corporation is an "employee" for purposes of the Americans with Disabilities Act (ADA). *Id.* at 449-50. This appeal allows us to consider whether that test applies to business entities that are not professional corporations in a Title VII employment action. We hold that it does.

I.

Mariotti Building Products, Inc., is a "closely held family business." Louis S. "Babe" Mariotti started the family business in 1947, operating "a small lumber yard." In the 1960s, Babe's sons, Plaintiff Robert A. Mariotti, Sr. (Plaintiff), and his two brothers, Eugene L. Mariotti, Sr. and Louis C. Mariotti "joined the business." Babe and his sons continued to develop the business, eventually incorporating it as Mariotti Building Products, Inc. (MBP). The business "experienced substantial growth" over the years with "annual sales skyrocketing from less than $250,000 to over $60 Million." MBP, according to the amended complaint, is "recognized as the area's best source for building materials[.]" Plaintiff averred that he was "responsible for developing and growing a number of areas" of MBP's business, "principally manag[ing] the manufactured housing sales division of the company together with customer credit, bill paying, and purchasing and inbound transportation of product lines[.]" Plaintiff further averred that the divisions he managed "earned profit" of more than $15 million in the six years preceding termination of his employment, and that that

3

amount exceeded the profit of the divisions managed by his brother Eugene.

As "one of the founders of MBP," Plaintiff was an officer of the corporation, serving as both vice-president and secretary. He also served as a member of the board of directors, and was a shareholder pursuant to a written agreement executed by the parties on July 23, 2007. Plaintiff averred that he and his brothers "were not at-will employees" of MBP because they were employed pursuant to an agreement that provided for termination "only for cause."

Plaintiff alleged that he had a "spiritual awakening" in 1995. His newfound spirituality, he claimed, resulted in "a systematic pattern of antagonism" toward him. It took the form of "negative, hostile and/or humiliating statements" about him and his religious affiliation. MBP's officers, directors, and some employees were the source of this harassment. In 2005, the harassment increased.

Babe Mariotti, the family patriarch, died either at the end of 2008 or in the first days of January 2009. On January 4, 2009, while the family was making arrangements for the funeral, Eugene Mariotti, derided Plaintiff and his faith. At the funeral on January 6, Plaintiff delivered a eulogy, which included comments about his own faith, and his "father's good example." The eulogy upset members of the family. On January 8, the shareholders of the closely held family business convened a meeting in Plaintiff's absence and decided to terminate his employment.

4

Two days later on January 10, 2009, Plaintiff received written notice of the termination of his employment. The notice recited that the shareholders had met to discuss his future status as an employee and that the vote to terminate his employment had been unanimous and was effective immediately. The letter explained that various benefits would cease, including the use of a company car, health insurance coverage, a cellular telephone, access to company credit cards, and the availability of an office. Finally, the letter explained that "[y]our share of any *draws* from the corporation or other entities will continue to be distributed to you."[1]

Despite his termination in January of 2009, Plaintiff continued to serve as a member of MBP's board of directors "until August 6, 2009, when the shareholders did not re-elect him as a director" of the closely held family corporation. On October 22, 2009, Plaintiff filed a timely charge of religious discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended. 42 U.S.C. § 2000e-2(a)(1). Thereafter, Plaintiff filed suit against MBP, asserting Title VII claims of religious discrimination and a hostile work environment. He also asserted several state law claims. MBP moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff was not an "employee" for purposes of Title VII and could not invoke its protections. An amended

---

[1] In a closely held corporation, a "draw" is a withdrawal of money from the business to the business owner. The American Heritage Dictionary of Business Terms (2010), *available at* http://business.yourdictionary.com/draw.

complaint followed, and was met with a second motion to dismiss asserting the same argument.

In a Memorandum dated July 8, 2011, the District Court granted the motion to dismiss the Title VII claims and declined to exercise supplemental jurisdiction over the state law claims. The Court concluded that Plaintiff was "not an 'employee' under Title VII." *Mariotti v. Mariotti Bldg. Prods., Inc.*, No. 3:11-CV-737, 2011 WL 2670570, at *4 (M.D. Pa. July 8, 2011). Alternatively, the Court determined that "[e]ven if [Plaintiff] was an employee under Title VII, he has failed to state a hostile work environment claim." *Id.* A timely notice of appeal followed.[2]

II.

Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that "the allegations in a complaint, however true, could not raise a claim of entitlement to relief[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). We exercise plenary review over an order granting a Rule 12(b)(6) motion. *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 (3d Cir. 2010). Whether the District Court applied the correct legal standard in deciding that Plaintiff was not an employee for purposes of Title VII presents a legal question. Accordingly, we exercise

---

[2] The District Court exercised jurisdiction under 28 U.S.C. §§ 1331, 1367. We have appellate jurisdiction under 28 U.S.C. § 1291.

6

plenary review. *Lanning v. Se. Pa. Transp. Auth.*, 181 F.3d 478, 484-85 (3d Cir. 1999).

III.

In *Clackamas*, the Supreme Court considered whether the shareholder-directors of a professional corporation should be counted as employees in determining whether the business entity met the threshold number of employees, and thereby qualified as an employer under the ADA. 538 U.S. at 442. Noting that the ADA purported to define the term "employee," the Court began its analysis by declaring that the statute "simply states that an 'employee' is 'an individual employed by an employer.'" *Id.* at 444 (quoting 42 U.S.C. § 12111(4)). This definition, in the Court's view, "surely qualifies as a mere 'nominal definition' that is 'completely circular and explains nothing.'"[3] *Id.* (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992)). Consistent with precedent, the Supreme Court looked to the "'conventional master-servant relationship as understood by common-law agency doctrine'" in deciding what Congress intended the term "employee" to mean. *Id.* at 445 (quoting *Darden*, 503 U.S. at 322-23).

The Court observed that "the common law's definition of the master-servant relationship," focusing as it does on the "master's control over the servant," provided "helpful guidance." *Id.* at 448. It concluded that "the common-law element of control is the principal guidepost that should be followed" in deciding whether an individual is an employee.

---

[3] We would go so far as to characterize it as tautological.

7

*Id.* After considering the guidelines of the Equal Employment Opportunity Commission (EEOC) applicable to determining whether "partners, officers, members of boards of directors, and major shareholders qualify as employees[,]" *id.*, the Court declared that six factors in the EEOC guidelines were "relevant to the inquiry whether a shareholder-director is an employee," *id.* at 449. The six EEOC factors identified by the Court were:

> [1.] Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work
>
> [2.] Whether and, if so, to what extent the organization supervises the individual's work
>
> [3.] Whether the individual reports to someone higher in the organization
>
> [4.] Whether and, if so, to what extent the individual is able to influence the organization
>
> [5.] Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts
>
> [6.] Whether the individual shares in the profits, losses, and liabilities of the organization.

*Id.* at 449-50 (quoting EEOC Compl. Man. § 605:0009 (2000)).

The Supreme Court instructed that "[a]s the EEOC's standard reflects, an employer is the person, or group of persons, who owns and manages the enterprise." *Id.* at 450. The Court cautioned against using an individual's title as the determinative factor and noted that the mere existence of an employment agreement is likewise not dispositive. *Id.* Rather, "the answer to whether a shareholder-director is an employee depends on all the incidents of the relationship . . . with no one factor being decisive." *Id.* at 451 (internal quotation marks and citations omitted).

Plaintiff contends that *Clackamas* should not be applied in this case. He is correct that there are several differences between *Clackamas* and this case. None of those differences, however, provides a sound basis for disregarding the Supreme Court's guidance in *Clackamas.*

First, Plaintiff argues *Clackamas* concerned the ADA, not Title VII. This distinction is without significance. The Supreme Court granted certiorari in *Clackamas* to address the conflict among the courts in determining whether an individual qualifies as an employee under the ADA, as well as under other antidiscrimination statutes, including Title VII and the Age Discrimination in Employment Act (ADEA). 538 U.S. at 444 n.3. Because Title VII's definition of employee is the same as the ADA's definition, *see* 42 U.S.C. §§ 2000e(f), 12111(4), and because the EEOC's guidelines, on which the *Clackamas* Court relied, apply to coverage under Title VII, the ADEA, the ADA, and the Equal Pay Act,

9

*see Clackamas*, 538 U.S. at 449 n.7, we conclude that the analysis set out in *Clackamas* applies to Title VII as well.  *See De Jesus v. LTT Card Servs., Inc.*, 474 F.3d 16, 24 (1st Cir. 2007).

Second, we recognize that *Clackamas* concerned whether an individual was an employee for purposes of determining if the employee threshold had been met, thereby subjecting the business entity to the ADA's prohibitions against discrimination.  538 U.S. at 442.  As Plaintiff correctly notes, there is no dispute in this case that MBP, which has more than 15 employees, qualifies as an employer covered by Title VII.  Nonetheless, *Clackamas* remains applicable here because neither the ADA nor Title VII define the term "employee" solely for purposes of deciding which business entities may be subject to the proscriptions against employment discrimination.[4]  Rather, the definitions in the ADA and Title VII also apply to the statutory provisions establishing enforcement mechanisms that may be exercised by the EEOC or the aggrieved employee.  42 U.S.C. §§ 2000e-5, 12117.  Thus, the definitions of "employer" and "employee" set forth in both the ADA and Title VII are relevant in resolving (1) whether an entity qualifies as an "employer" under Title VII, and (2) whether an individual is

---

[4] *See* 42 U.S.C. § 2000e (providing that the definitions are for the purposes of "this subchapter," which is Subchapter VI, regarding equal employment opportunities); *see also* 42 U.S.C. § 12111 (specifying that its definitions are for purposes of Subchapter I of the ADA pertaining to employment).

10

an "employee" who "may invoke [Title VII's] . . . protections against discrimination[.]" *Clackamas*, 538 U.S. at 446 n.6. As a consequence, even though *Clackamas* considered the question of whether certain individuals were employees of a covered entity, its test informs our determination as to whether Plaintiff is entitled to invoke Title VII's protections.

Third, we consider Plaintiff's contention that the *Clackamas* test applies only to professional corporations. Because MBP is not a professional corporation, Plaintiff asserts that the District Court erred by applying the *Clackamas* test.

We are not persuaded. As the First Circuit noted in *De Jesus*, the EEOC Compliance Manual, on which the *Clackamas* Court relied, did "not restrict itself to professional corporations; indeed, it explicitly covers major shareholders." 474 F.3d at 24. For that reason, the First Circuit concluded that *Clackamas* "applies to close corporations as well as to professional corporations." *Id.* Similarly, in *Smith v. Castaways Family Diner*, 453 F.3d 971 (7th Cir. 2006), the Seventh Circuit reiterated "that the *Clackamas* test is not confined to shareholder-directors" of a professional corporation, but "may be applied" to other business entities as envisioned by the EEOC manual that the Court embraced. *Id.* at 977 (citing *Solon v. Kaplan*, 398 F.3d 629, 633 (7th Cir. 2005)). The Court proceeded to apply *Clackamas* in deciding whether the sole proprietor's mother and husband, both of whom managed the business, qualified as employees, thereby subjecting the diner to Title VII coverage.

11

We agree with our sister Courts of Appeals that *Clackamas*'s application is not limited to professional corporations. The EEOC Manual on which the Court relied in *Clackamas* considered multiple business enterprises. 538 U.S at 449. Furthermore, the Supreme Court's analysis pointed out that the form of the business entity was not the key element, emphasizing that the determination of one's status cannot be decided simply on the basis of titles, such as an individual's status as a partner, director, or officer, or the existence of documentary evidence. *Id.* at 449-450. "Rather, . . . the answer to whether [an individual] is an employee depends on all of the incidents of the relationship with no one factor being decisive." *Id.* at 451 (internal quotation marks, ellipsis and citations omitted). We therefore conclude that the nature of the business entity is simply an attribute of the employment relationship that must be considered in applying the *Clackamas* test to determine whether an individual is an employee or an employer. For that reason, MBP's status as a closely held family business informs our analysis.

Consistent with *Clackamas*, our analysis focuses on the element of control and the six factors discussed in that precedent. 538 U.S. at 448-50. As the Seventh Circuit explained in *Castaways Family Diner*, the six factors address not only the extent of an individual's control, but also "the source of an individual's authority" to control. 453 F.3d at 983. *Castaways Family Diner* recognized that in *Clackamas* the Supreme Court did not mention the source of an individual's authority as a factor in the analysis. *Id.* at 984. Nonetheless, the Seventh Circuit believed that the Supreme Court "hinted" as much "in at least one of the test's six factors," *i.e.* the factor regarding "'[w]hether the organization

12

*can* hire or fire the individual or set the rules and regulations of the individual's work.'" *Id.* (quoting *Clackamas*, 538 U.S. at 449 (emphasis added)). It further noted that the

> significance of the source of an individual's authority is implicit in the framing of the test as one for partners, major shareholders, directors, and the like. . . . [as] those are the types of individuals whose status within an enterprise potentially gives them authority that is not dependent on the acquiescence of others. *Clackamas* itself speaks not only of the control that an employer exercises but his *right* to exert such control.

*Id.* at 984-85 (citing *Clackamas*, 538 U.S. at 448). We agree with the Seventh Circuit. As additional support for our view, we note that the fourth factor set forth in *Clackamas*, which scrutinizes the individual's ability to "influence the organization," implicitly examines the source of the individual's authority. *Clackamas*, 538 U.S. at 450.

Accordingly, we adopt the approach of the Seventh Circuit in *Castaways Family Diner*. In determining whether Plaintiff's amended complaint states a claim for relief under Title VII, we "must take into account not only the authority [he] wields within the enterprise but also the source of that authority." *Castaways Family Diner*, 453 F.3d at 984. Specifically, we must consider whether Plaintiff "exercises the authority by right, or whether he exercises it by delegation at the pleasure of others who ultimately do possess the right to control the enterprise." *Id.*

13

Our review of the allegations of Plaintiff's amended complaint confirms that Plaintiff's status as a shareholder, a director, and a corporate officer gave him both substantial authority at MBP and the right to control the enterprise. He was entitled to participate in the management, development, and governance of MBP. By sitting on the board of directors and serving as a corporate officer, Plaintiff had the ability to participate in the fundamental decisions of the business. We cannot ignore Plaintiff's allegation, which we must accept as true, that after his termination in January of 2009, he continued to serve as a director of the closely held family corporation until August 6, 2009. Furthermore, the termination letter he received did not mention the cessation of any salary. Instead, it stated that "[y]our shares of any draws from the corporation or other entities will continue to be distributed to you." We conclude that Plaintiff's amended complaint fails to allege that he is "the kind of person that the common law would consider" an employee. *Clackamas*, 538 U.S. at 445 n.5. He has not alleged a claim that entitles him to relief.[5]

---

[5] The *Clackamas* test is a fact intensive one; therefore, cases requiring application of the test may generally require resolution at the summary judgment stage, rather than at the motion to dismiss stage. *See Decotiis v. Whittemore*, 635 F.3d 22, 35 n.15 (1st Cir. 2011) (noting in other context that courts hesitate to dispose of fact-intensive inquiry at motion to dismiss stage); *Todd v. Exxon Corp.*, 275 F.3d 191, 199-200 (2d Cir. 2001) (same). Similarly, we note that most of the decisions of our sister Courts of Appeals, in applying the *Clackamas* factors, dealt with motions for summary

We recognize that Plaintiff's amended complaint alleges that he did not have exclusive control of MBP. Exclusive control, however, is merely one attribute of the employment relationship. Its absence does not compel a conclusion that an individual who lacks it is an employee entitled to invoke Title VII's protections. Such a conclusion would ignore that the EEOC guidelines, which the Court embraced in *Clackamas*, pertained to business entities that do not vest exclusive control in any one individual. *Id.* at 448 (noting the guidelines applied to "partner*s*, officer*s*, member*s* of boards of directors, and major shareholder*s*" (emphasis added))

The allegations in the amended complaint make plain that Plaintiff was entitled to participate in the development

judgment, rather than motions to dismiss. *E.g., Fichman v. Media Ctr.*, 512 F.3d 1157, 1158 (9th Cir. 2008); *De Jesus v. LTT Card Servs., Inc.*, 474 F.3d 16, 18 (1st Cir. 2007); *Smith v. Castaways Family Diner*, 453 F.3d 971, 972 (7th Cir. 2006); *Solon v. Kaplan*, 398 F.3d 629, 630 (7th Cir. 2005). *Clackamas* itself was an appeal from a grant of summary judgment. 538 U.S. at 442.

The fact that we are affirming the District Court's dismissal of the complaint based on application of the *Clackamas* test does not alter the fact-intensive nature of the analysis nor does it indicate that the motion to dismiss stage will usually be the appropriate juncture for application of the test. Rather, on the clear facts and circumstances of this specific case, we find that the District Court's determination was the proper one.

15

and governance of the business  His averment that he continued to serve after his termination on January 9, 2009 as a member of the board of directors confirms that he remained entitled by virtue of his position "to a say in the fundamental decisions" of the closely held family corporation for months after his termination. *Castaways Family Diner*, 453 F.3d at 983. For that reason, we conclude that the District Court did not err in its determination that the allegations in Plaintiff's complaint did not establish that he was an employee under Title VII. He is not entitled, therefore, to invoke its protections.

We will affirm the judgment of the District Court.[6]

---

[6] Because we conclude that Plaintiff is not entitled to invoke the protections of Title VII, there is no need to consider whether his amended complaint sufficiently alleged a hostile environment claim.