PS5-143                                                                                    **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-2009
_____

RAVANNA SPENCER,
                                        Appellant

v.

SECRETARY DEPARTMENT OF CORRECTIONS; ROBERT COLLINS;
MICHAEL LORADY; A.J. KOVALCHIK; MAJOR KELLER
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 12-cv-00616)
District Judge:  Honorable Edwin M. Kosik
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 23, 2015

Before:  CHAGARES, JORDAN and COWEN, Circuit Judges

(Opinion filed: June 25, 2015)
_____

OPINION*
_____

PER CURIAM

---

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Appellant Ravanna Spencer brought this pro se action under 42 U.S.C. § 1983 against the Secretary of the Pennsylvania Department of Corrections ("DOC") and several officials at the State Correctional Institute at Frackville ("SCI-Frackville"), claiming violations of his constitutional rights stemming from the use of a security light in his cell.[1]

Spencer was incarcerated at SCI-Frackville from August 2010 to September 2012.[2] For the majority of that time, he was in the Restricted Housing Unit ("RHU"). The defendants have attested that each cell in the RHU contains a light panel or fixture consisting of two twenty-eight-watt fluorescent bulbs, and one nine-watt fluorescent bulb. Pursuant to DOC policy, the larger lights are controlled by each inmate, but the nine-watt light remains on at all times for security purposes. DOC policy also does not permit RHU inmates to cover or modify the security light, or to cover their faces during inmate "count." The parties do not appear to dispute that most RHU security lights are covered by opaque plastic panels that somewhat dim the light, but that the light in Spencer's cell

---

[1] The defendants/Appellees are John Wetzel, Secretary of the DOC; Robert Collins, Superintendent of SCI-Frackville; Michael Lorady, Deputy Superintendent of Facilities Management at SCI-Frackville; Anthony Kovalchik, Deputy Superintendent for Centralized Services at SCI-Frackville; and Brian Keller, Major of the Guard at SCI-Frackville. Spencer sued all defendants in their official and individual capacities, seeking declaratory and injunctive relief prohibiting the defendants from enforcing the 24-hour RHU lighting policy, and money damages.

[2] We note that, as Spencer was transferred out of SCI-Frackville in September 2012, his request for declaratory and injunctive relief against officials at that institution is moot. Abdul-Akbar v. Watson, 4 F.3d 195, 206 (3d Cir. 1993).

was covered by a clear plastic panel until June 2012. Spencer argues that, regardless of its wattage, the security light was bright enough to allow him to read and write without effort, and to keep him awake even if he turned his face to the opposite wall. He testified that corrections officers did not regularly enforce the policy forbidding inmates to cover their security lights until December 2011. Thereafter, he testified, the constant lighting caused him to suffer severe headaches and vision problems, and made it difficult for him to sleep more than a couple of hours a night, exacerbating his pre-existing mental health problems.

Beginning in December 2011, Spencer filed several inmate request forms complaining about his security light, and requesting that he be permitted to cover his light or his face, or that officers use flashlights or other methods to conduct security checks. In January 2012, he filed a formal grievance which he pursued through appeal. His grievance and other complaints were denied on the basis of the DOC's RHU lighting policy, and Spencer was directed to report his health problems to medical staff.

The defendants first moved to dismiss the complaint on the grounds that Spencer had failed to allege their personal involvement in implementing the security lighting, and that minimal security lighting did not violate the Eighth Amendment. The District Court dismissed the complaint against defendant Wetzel, Secretary of the DOC, on the grounds that the claims against him were based on an inactionable theory of respondeat superior

3

liability, but permitted the claims to go forward as to the other defendants.[3]  After

discovery, the remaining defendants moved for summary judgment, which the District

Court granted.[4]  Spencer timely appealed from both the October 24, 2012 order

dismissing Wetzel, and the March 17, 2014 order granting summary judgment.

We have jurisdiction pursuant to 28 U.S.C. § 1291.  We exercise plenary review

over both the order dismissing the claims and the order granting summary judgment.  See

Mariotti v. Mariotti Bldg. Prods., Inc., 714 F.3d 761, 765 (3d Cir. 2013); Giles v.

Kearney, 571 F.3d 318, 322 (3d Cir. 2009).  We may affirm the District Court's judgment

on any grounds supported by the record.  Hughes v. Long, 242 F.3d 121, 122 n.1 (3d Cir.

2001).

Although the Constitution "does not mandate comfortable prisons," Rhodes v.

Chapman, 452 U.S. 337, 349 (1981), it does not permit inhumane ones that violate the

Eighth Amendment's prohibition against cruel and unusual punishment.  Farmer v.

Brennan, 511 U.S. 825, 832 (1994).  Prison conditions therefore "must not involve the

wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to

---

[3] In deciding both the motion to dismiss and the motion for summary judgment, the District Court approved and adopted the report and recommendation of the Magistrate Judge and overruled Spencer's objections thereto.

[4] At summary judgment, the defendants also argued that Spencer's claims were procedurally defaulted for failure to exhaust under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), because he named only Collins, Kovalchik, and Keller in his formal grievance, and failed to state in that grievance that those defendants were

the severity of the crime." Rhodes, 452 U.S. at 346, 347 (noting that "[a]mong 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification'") (citations omitted). To assert an Eighth Amendment conditions-of-confinement claim, a prisoner must show that the alleged condition or deprivation is "objectively, 'sufficiently serious'" to have denied him the "minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (citations and quotation marks omitted). For a claim based on a failure to prevent harm, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Id. A plaintiff must also show that the defendant demonstrated "deliberate indifference" to those conditions. Id. Accordingly, a prison official may be held liable under the Eighth Amendment "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847.

Constant illumination may, under certain circumstances, amount to a constitutional violation. See Keenan v. Hall, 83 F.3d 1083, 1090–91 (9th Cir. 1996) (considering a claim from a prisoner who suffered "grave" sleeping and other health problems due to large florescent lights that constantly illuminated his cell). However, a number of courts have concluded that security lights providing only enough light for officers to conduct nighttime security checks do not constitute an objectively serious deprivation. See, e.g., Wills v. Terhune, 404 F. Supp. 2d 1226, 1231 (E.D. Cal. 2005)

personally involved in decisions regarding the RHU lighting. In light of its decision

(finding that, in the absence of evidence of physical or mental harm, constant exposure to a thirteen-watt fluorescent security light was not cruel and unusual punishment); King v. Frank, 371 F. Supp. 2d 977, 985 (W.D. Wis. 2005) (rejecting a claim based on light from a nine-watt fluorescent security light where inmates could cover their eyes with cloth while sleeping and where plaintiff failed to show that the light caused any serious medical problems).  Courts have also noted the obvious, legitimate penological reasons for the use of continuous low-wattage lighting, such as the need to protect corrections officers and monitor prisoners.  See Chappell v. Mandeville, 706 F.3d 1052, 1059 (9th Cir. 2013) (collecting cases).

Without deciding whether a nine-watt florescent bulb is inherently insufficient to impinge upon a prisoner's constitutional rights, the District Court held that Spencer had failed to establish an Eighth Amendment violation because he did not produce competent medical evidence that he was injured by the light, or establish that the defendants exhibited deliberate indifference to his health or safety.[5]  We will affirm the District Court's judgment on the latter basis.

_____

granting summary judgment on the merits, the District Court did not decide this issue.

[5] The District Court also held—and we agree—that the defendants established a legitimate penological justification for the DOC lighting policies.  They attested that, because RHU inmates are checked on an hourly basis around the clock, the security lights allow officers to identify and account for inmates in their cells, to monitor inmates' health and safety, and to monitor any threats to the officers' own safety.  It is immaterial that there may be other, less intrusive methods of observing prisoners, in light of the wide-ranging deference given to prison officials to set policies to maintain security.  See Bell v. Wolfish, 441 U.S. 520, 547 (1979).  Cf. Monroe v. Beard, 536 F.3d 198, 207 (3d

The medical records attached to Spencer's summary judgment briefing cover February, March, and April of 2012. They show that during those months Spencer received painkillers and various psychoactive prescription drugs. At his deposition in 2013, however, Spencer testified that he had started taking at least three of those medication several years before December 2011, and continued to take them. He testified that he was first prescribed the drug Elavil for sleeplessness in December 2011, but conceded that he had difficulty sleeping and had taken medication for that condition both before and after his time at SCI-Frackville, and was still taking Elavil as of the date of his deposition. The medical records show that Spencer requested painkillers for an injured hand and wrist, but that he "denie[d] headaches." In his "request slips" and grievances to the named defendants—who are not medical professionals—Spencer complained of sleeplessness, headache, agitation, and deteriorating mental health, but there is no evidence that he reported those issues to prison medical staff. We note, however, that only general medical records have been produced, because the District Court denied Spencer's discovery request for access to his mental health records. The records also show that Spencer complained of blurry vision and light sensitivity, and that he failed a "visual acuity" test on or about March 13, 2012, but there is no evidence that any medical professional attributed his vision problems to the security lighting. It is a close question whether, in conjunction with his testimony, Spencer has adduced evidence

---

Cir. 2008) (prison officials are not required to use the least restrictive means possible to

sufficient to create a genuine dispute as to the objective severity of the lighting conditions, or the cause of his injuries.  Given Spencer's inability to access his own mental health records and the fact that the available medical records do show that he was treated for psychological, sleep, and vision problems shortly after he began to complain about the light, summary judgment is not appropriate on this issue.[6]

We will nevertheless affirm the District Court's judgment because the evidence cannot support the conclusion that the named defendants acted with deliberate indifference.  In response to his complaints about the security light, Spencer was directed to report his health problems to prison medical staff.  The available medical records and Spencer's own testimony confirm that he received regular care from a number of nurses and a psychiatrist, including a variety of medications, a vision test, and prescription eyeglasses.  In addition, the clear plastic panel covering the light in his cell was replaced with an opaque plastic panel on or about June 25, 2012.  The DOC maintenance work order notes that the work is being performed because "[Spencer] expressed his concerns with [Program Review Committee] about his night light being too bright."[7]  There is

_____

further legitimate penological interests).

[6] We also note that Spencer's testimony and the June 2012 replacement of his light cover establish some factual dispute as to whether Spencer's cell was more brightly lit than the cells of other RHU inmates.  We do not reach any conclusion here as to whether constant illumination by a nine-watt fluorescent bulb, by itself, creates an objectively serious deprivation.

[7] The complaint, which was filed in April 2012, does not cover the time period in which the light cover was replaced.  However, both parties rely on this piece of evidence in their

nothing in the record, however, to show when or if the named defendants were personally aware that Spencer's light was unusual, if indeed it was. Spencer's grievances challenged the RHU lighting policies as a whole, but did not contain any indication that his own light was brighter than any other inmate's. More importantly, there is nothing to show that the defendants knew the security light might pose a substantial risk of serious harm to Spencer. Given the general consensus among courts that some minimal level of constant lighting does not violate the Eighth Amendment, it would not be fair to say that the lighting at SCI-Frackville posed any obvious risk to inmate health and safety generally. And to the extent that the defendants were aware of Spencer's subjective complaints about the effects of the light on his own health, they did not ignore them.

Accordingly, we will affirm the judgment of the District Court.

summary judgment briefing—by the defendants, as evidence that they were not deliberately indifferent, and by Spencer, as evidence that his original light was too bright.